## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| Aimee Allen, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:   2:21-cv-2522 |
| | ) | |
| v. | ) | |
| | ) | |
| Equifax Information Services, LLC, | ) | |
| Experian Information Solutions, Inc., and | ) | **COMPLAINT** |
| PennyMac Loan Services, LLC, | ) | **WITH JURY TRIAL DEMAND** |
| | ) | |
| Defendants. | ) | |

### COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE
### FAIR CREDIT REPORTING ACT

### INTRODUCTION

1.  The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.  The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA,

Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3.   Aimee Allen ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and PennyMac Loan Services, LLC ("PennyMac") (jointly referred to as "Defendants") with regard to inaccurate and/or materially misleading credit information and Defendants' failure to properly investigate Plaintiff's disputes.

4.   Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

5.   While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6.   Unless otherwise stated, all of the conduct engaged in by Defendants took place in Kansas.

7.   Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

8.   Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

### JURISDICTION AND VENUE

9.   Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331.

10.  This Court has federal question jurisdiction because this case arises out of Defendants' violations of federal law—the FCRA.

11.     Venue is proper pursuant to 28 U.S.C. § 1391 as all the events and omissions giving rise to Plaintiff's claims occurred in Kansas.

12.     Defendants are subject to the Court's personal jurisdiction, as Defendants each conduct business within Kansas, and Defendants' conduct giving rise to this action accrued in Kansas.

13.     Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

14.     Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein Equifax was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Equifax is liable to Plaintiff or the relief prayed for herein.

15.     Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein Experian was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Experian is liable to Plaintiff or the relief prayed for herein.

16.     Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein PennyMac was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which PennyMac is liable to Plaintiff or the relief prayed for herein.

## PARTIES

17.   Defendant Equifax is a limited liability company formed under the laws of the State of Georgia and doing business nationwide, including in the State of Kansas.

18.   Equifax's registered agent address is: Corporation Service Company, 2900 SW Wanamaker Dr., Ste. 204, Topeka, KS 66614.

19.   Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.  Accordingly, Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

9.   Unless otherwise indicated, the use of Equifax's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Equifax.

10.   Defendant Experian is an entity doing business in the State of Kansas.

11.   Defendant Experian's registered agent address is: The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

12.   Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

13.   Unless otherwise indicated, the use of Experian's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Experian.

14.   Defendant PennyMac is a limited liability company formed under the laws of the State of

Delaware and doing business nationwide, including in the state of Kansas.

15.  PennyMac's registered agent address is: The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

16.  PennyMac regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions, such as Plaintiff's transactions at issue in this lawsuit and described herein, and is, therefore, a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

17.  Unless otherwise indicated, the use of PennyMac's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of PennyMac.

## FACTUAL ALLEGATIONS

20.  On or about July 14, 2017, Plaintiff obtained a residential home mortgage from Busey Bank for the original principal amount of $121,754.00 (the "Mortgage").

21.  The Mortgage is collateralized by residential real property located at 8001 Elizabeth Ave., Kansas City, KS 66112, as evidenced by the mortgage recorded with the Wyandotte County, Kansas Register of Deeds, book/page number 2017R-10388.

22.  The Mortgage was subsequently transferred by Busey Bank, and eventually the servicing of the Mortgage landed in the hands of PennyMac.

23.  On or about February 27, 2020, Plaintiff filed a Chapter 13 Bankruptcy petition in the United States District Court for the District of Kansas, Case Number 20-20318 (the "Bankruptcy Case").

24.  Plaintiff filed her First Amended Chapter 13 Plan in the Bankruptcy Case on or about May 5, 2020 (the "Bankruptcy Plan").

25.   On or about July 17, 2020, the bankruptcy court entered an Order Confirming Chapter 13 Plan.

26.   Pursuant to the terms of the confirmed Bankruptcy Plan, Plaintiff is required to pay her Mortgage payments directly to PennyMac.

27.   Plaintiff has faithfully made her monthly payments to PennyMac directly, as required by the terms of her confirmed Bankruptcy Plan.

28.   As a secured debt which will mature *after* the completion of the Bankruptcy, the Mortgage is considered to be a "Long Term Debt Not Subject to Discharge" pursuant to 11 U.S.C. § 1322(b)(5) and 11 U.S.C. § 1328(a)(1).

29.   This designation and treatment of the Mortgage in the Bankruptcy Case means that the Mortgage remains largely unaffected by the Bankruptcy Case.

30.   However, Defendants reported the mortgage on Plaintiff's Equifax and Experian credit reports in an inaccurate and/or materially misleading way.

31.   Plaintiff's creditors and potential creditors have accessed Plaintiff's Equifax and Experian credit reports while the misreporting described herein was on Plaintiff's credit reports and were misinformed by Defendants about Plaintiff's credit worthiness.

### *PennyMac and Equifax's Inaccurate Reporting on the Equifax Credit Report*

32.   On or about August 12, 2020, Plaintiff obtained a copy of her consumer report as published by Equifax.

33.   Upon Plaintiff's review of the Mortgage tradeline (the "PennyMac Account"), she found that PennyMac and Equifax were reporting numerous incorrect remarks regarding the PennyMac Account.

34.   The Mortgage tradeline reported the PennyMac Account as "CLOSED", the Account

Status was reported as "INCLUDED_IN_CHAPTER_13," there was no Reported Balance being reported, there was no Scheduled Payment Amount being reported, the Payment History was inaccurate, and the Comments section stated "Bankruptcy chapter 13, Bankruptcy petition, Fixed rate."

35.    By reporting that the PennyMac Account was "CLOSED", by reporting "INCLUDED_IN_CHAPTER_13," by failing to report a balance and  a scheduled payment amount, by inaccurately reporting Plaintiff's payment history, and by reporting "Bankruptcy chapter 13, Bankruptcy petition, Fixed rate" in the comments section of the PennyMac Account tradeline, Equifax and PennyMac were incorrectly making it appear as if the Mortgage had been closed and that it had been, or would be, discharged through the Bankruptcy Case.

36.    It is illegal and inaccurate for PennyMac and Equifax to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

37.    It is illegal and inaccurate for PennyMac and Equifax to report any derogatory collection information which was factually incorrect and/or materially misleading.

38.    However, PennyMac and Equifax either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

*Plaintiff's First Dispute to Equifax*

39.    On or after September 8, 2020, Plaintiff disputed Equifax's reporting of the PennyMac Account pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information.

40.    Plaintiff sent a letter to Equifax requesting the above inaccurate and incorrect derogatory information be updated, modified, or corrected as to the PennyMac Account (the "Equifax

Dispute").

41. Specifically, Plaintiff explained in her dispute letter that the PennyMac Account was not closed, that the Mortgage was not a debt which would be discharged in the Bankruptcy Case, that she was current in her monthly payments, that a balance was owed on the Mortgage, and that the Mortgage was not included in the Bankruptcy Case.

42. Plaintiff attached supporting documents to the Equifax Dispute, including a copy of a document provided to her by PennyMac entitled "Past Payments Breakdown", which showed her Mortgage payment history, monthly payment amount, principal balance, and other relevant information.

43. Equifax received the Equifax Dispute.

44. Upon receipt of the Equifax Dispute, Equifax was required to conduct a reinvestigation into the PennyMac Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

45. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify PennyMac of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for PennyMac's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

46. Pursuant to 15 U.S.C. § 1681s-2(b), PennyMac had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

47. On information and belief, however, Equifax failed to send an Automated Consumer Dispute Verification ("ACDV") to PennyMac as required by 15 U.S.C. §1681i, and the incorrect reporting remained.

48. A reasonable investigation by Equifax and PennyMac would have indicated that they were

reporting the PennyMac Account inaccurately on the Equifax Credit Report.

49.     These events did not occur, however, and the inaccurate, false, and misleading information continued to be reported on Plaintiff's Equifax credit report.

***The Continued Inaccurate Reporting of the PennyMac Account on the Equifax Credit Report***

50.     On or about February 3, 2021, Plaintiff obtained a copy of her consumer credit report as published by Equifax (the "Post Dispute Equifax Report").

51.     Equifax failed to remove or correct the inaccurately reported information contained in the PennyMac Account tradeline.

52.     Instead, in the Post Dispute Equifax Report, PennyMac and Equifax continued to inaccurately report the PennyMac Account.

53.     Specifically, PennyMac and Equifax continued to report the PennyMac Account as "CLOSED," they continued to report the status as "INCLUDED_IN_CHAPTER_13," they continued to report no balance or scheduled payment amount, they continued to report an incomplete Payment History, and the comments section still stated "Bankruptcy chapter 13, Bankruptcy petition, Fixed rate."

54.     Additionally, Plaintiff discovered that PennyMac and Equifax were inaccurately reporting a Date of First Delinquency and a Delinquency First Reported date.

55.     On the Post Dispute Equifax Report, the Date of First Delinquency and a Delinquency First Reported did not actually correspond to an actual delinquency by Plaintiff on her Mortgage.

56.     Rather, the Date of First Delinquency and a Delinquency First Reported that appeared on her Post Dispute Equifax Report corresponded with the month that Plaintiff filed her Bankruptcy Case.

57.     PennyMac and Equifax made it incorrectly appear as though Plaintiff was late on her

Mortgage in February 2020 when in fact she was not.

58.   Additionally, PennyMac and Equifax's reporting was inaccurate because the result of its reporting was to make it appear as if the PennyMac Account was closed, that the PennyMac Account was or would be discharged in the Bankruptcy Case, and that Plaintiff was no longer making payments on the PennyMac Account and that she had in fact stopped making payments at or before the same time she filed the Bankruptcy Case.

59.   Equifax's continued inaccurate reporting, failures to investigate or correct the inaccurately reported information on the PennyMac Account were particularly egregious in that the Equifax Dispute included supporting documents from PennyMac which Equifax chose to ignore.

### Plaintiff's Second Dispute to Equifax

60.   On or after July 22, 2021, Plaintiff again disputed Equifax's reporting of the PennyMac Account pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information.

61.   Plaintiff sent a letter to Equifax requesting the above inaccurate and incorrect derogatory information be updated, modified, or corrected as to the PennyMac Account (the "Second Equifax Dispute").

62.   Specifically, Plaintiff again explained in the Second Equifax Dispute that the PennyMac Account was not closed, that the Mortgage was not a debt which would be discharged in the Bankruptcy Case, that she was current in her monthly payments, that a balance was owed on the Mortgage, and that the Mortgage was not included in the Bankruptcy Case.

63.   Plaintiff went further in the Second Equifax Dispute to dispute Equifax's inaccurate reporting of a date of first delinquency and delinquency first reported dates.

64. Plaintiff attached supporting documents to the Equifax Dispute, including a copy of a "Notice of Mortgage Payment Change" filed by PennyMac in the Bankruptcy Case as well as a payment history provided to Plaintiff by PennyMac through its website.

65. Equifax received the Second Equifax Dispute.

66. Upon receipt of the Second Equifax Dispute, Equifax was required to conduct a reinvestigation into the PennyMac Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

67. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify PennyMac of Plaintiff's Second Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Second Equifax Dispute for PennyMac's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

68. Pursuant to 15 U.S.C. § 1681s-2(b), PennyMac had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

69. Upon information and belief, Equifax notified PennyMac of Plaintiff's dispute.

70. Upon information and belief, PennyMac received notice of Plaintiff's dispute as to the reporting of the PennyMac Account on Plaintiff's Equifax Credit Report.

71. A reasonable investigation by Equifax and PennyMac would have indicated that they were reporting the PennyMac Account inaccurately on the Equifax Credit Report.

72. However, the inaccurate, false, and misleading information continued to be reported on Plaintiff's Equifax credit report.

***The Continued Inaccurate Reporting of the PennyMac Account on the Equifax Credit Report***

73. On or about September 9, 2021, Plaintiff obtained a copy of her consumer credit report as

published by Equifax (the "Post Second Dispute Equifax Report").

74. PennyMac and Equifax failed to remove or correct the inaccurately reported information contained in the PennyMac Account tradeline.

75. Instead, in the Post Second Dispute Equifax Report, PennyMac and Equifax continued to inaccurately report the PennyMac Account.

76. Specifically, PennyMac and Equifax continued to report the PennyMac Account as "CLOSED," they continued to report the status as "INCLUDED_IN_CHAPTER_13," they continued to report no balance or scheduled payment amount, they continued to report an incomplete Payment History, the comments section still stated "Bankruptcy chapter 13, Bankruptcy petition, Fixed rate", and the Date of First Delinquency and Delinquency First Reported dates remained.

77. PennyMac and Equifax also continued to inaccurately report that Plaintiff had a Date of First Delinquency and Date of First Delinquency First Reported of February 2020.

78. PennyMac and Equifax's reporting was inaccurate because the result of its reporting was to make it appear as if the PennyMac Account was closed, that the PennyMac Account was or would be discharged in the Bankruptcy Case, that Plaintiff was late on the PennyMac Account before filing the Bankruptcy Case, and that Plaintiff was no longer making payments on the PennyMac Account.

79. PennyMac and Equifax's continued inaccurate reporting and failures to investigate or correct the inaccurately reported information on the PennyMac Account were particularly egregious in that the Second Equifax Dispute included supporting documents from PennyMac which PennyMac and Equifax chose to ignore.

### *PennyMac and Experian's Inaccurate Reporting on the Experian Credit Report*

80.  Suspecting that the inaccurate reporting from the Equifax credit reports may additionally be reflected on her other credit reports, Plaintiff reviewed a copy of her consumer report as published by Experian on or before July 22, 2021.

81.  Upon Plaintiff's review of the Mortgage tradeline (the "PennyMac Account"), she found that PennyMac and Experian were reporting numerous incorrect remarks regarding the PennyMac Account.

82.  The Mortgage tradeline on the Experian credit report was reporting no balance, no monthly payment, a payment history that stopped as of the date the Bankruptcy Case was filed, and a Status of "Petition for Chapter 13 Bankruptcy/Never Late."

83.  By failing to report a balance, monthly payment amount, or payment history past the date that the Bankruptcy Case was filed, and by reporting the PennyMac Account to include bankruptcy information, PennyMac and Experian created the false impression that the Mortgage would be or had already been discharged through the Bankruptcy Case when that was not true.

84.  It is illegal and inaccurate for PennyMac and Experian to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

85.  It is illegal and inaccurate for PennyMac and Experian to report any derogatory collection information which was factually incorrect and/or materially misleading.

86.  However, PennyMac and Experian either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

### *Plaintiff's Dispute to Experian*

87.  On or after July 22, 2021, Plaintiff disputed Experian's reporting of the PennyMac Account

pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information.

88.    Plaintiff sent a letter to Experian requesting the above inaccurate and incorrect derogatory information be updated, modified, or corrected as to the PennyMac Account (the "Experian Dispute").

89.    Specifically, Plaintiff explained in her dispute letter that the PennyMac Account bore a current balance and monthly payment, that she had been timely making all required payments after the date the Bankruptcy Case was filed, and that PennyMac and Experian's reporting that the PennyMac Account was included in bankruptcy was false and/or misleading.

90.    Plaintiff attached supporting documents to the Experian Dispute, including a "Notice of Mortgage Payment Change" which had been filed by PennyMac in the Bankruptcy Case as well as a loan activity and payment history which was provided to Plaintiff by PennyMac through its website.

91.    Experian received the Experian Dispute.

92.    Upon receipt of the Experian Dispute, Experian was required to conduct a reinvestigation into the PennyMac Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

93.    Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify PennyMac of Plaintiff's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for PennyMac's review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

94.    Pursuant to 15 U.S.C. § 1681s-2(b), PennyMac had a duty to conduct an investigation with

respect to the disputed information, and to modify or delete that information appropriately.

95.    Upon information and belief, Experian notified PennyMac of Plaintiff's dispute.

96.    Upon information and belief, Penny Mac received notice of Plaintiff's dispute as to the reporting of the PennyMac Account on Plaintiff's Experian Credit Report.

97.    A reasonable investigation by Experian and PennyMac would have indicated that they were reporting the PennyMac Account inaccurately on the Experian Credit Report.

98.    However, the inaccurate, false, and misleading information continued to be reported on Plaintiff's Experian credit report.

***The Continued Inaccurate Reporting of the PennyMac Account on the Experian Credit Report***

99.    On or after August 9, 2021, Plaintiff received her Dispute Results from Experian (the "Experian Dispute Results").

100.    PennyMac and Experian failed to remove or correct the inaccurately reported information contained in the PennyMac Account tradeline.

101.    Instead, in the Experian Dispute Results, PennyMac and Experian continued to inaccurately report the PennyMac Account.

102.    Specifically, Penny Mac and Experian continued to report the PennyMac Account with no balance or monthly payment amount, they continued to omit any payment history past the month the Bankruptcy Case was filed, and they continued to report the account as "Petition for Chapter 13 Bankruptcy/Never late".

103.    PennyMac and Experian's reporting was inaccurate because the result of its reporting was to make it appear as if Plaintiff's PennyMac Account had been or would be discharged through her Bankruptcy Case, that no balance or monthly payment was owed, and that

Plaintiff had not made any payments since or before her Bankruptcy Case was filed.

104.    PennyMac and Experian's continued inaccurate reporting, failures to investigate or correct the inaccurately reported information on the PennyMac Account were particularly egregious in that the Experian Dispute included supporting documents from PennyMac which PennyMac and Experian chose to ignore.

### The Impact of Inaccurate or Misleading Information on Consumer Reports

105.    A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

      i.      credit or insurance to be used primarily for personal, family, or household purposes;

      ii.     employment purposes; or

      iii.    any other purpose authorized under section 1681b.

106.    As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

107.    A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. See https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

108.    The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. See https://www.ftc.gov/news-

events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

109.    The Fair Isaac Corporation credit risk scoring system, commonly referred to as "FICO", is the leading credit scoring system and utilizes data reported by credit reporting agencies. See, https://www.myfico.com/credit-education/credit-scores/.

110.    Defendants' departures from the credit industry's own reporting standards have caused Plaintiffs' to suffer from reduced FICO credit scores.

111.    The Fair Isaac Corporation uses the data in consumer reports to calculate consumers' credit scores (also known as credit risk scores). *Id*. The term "credit score" is a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default. Consumer Financial Protection Bureau, *Supervision and Examination Manual, Version 2* (October 2012), p. 53, available at http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf, *archived at* http://perma.cc/JF32-RFAA.

112.    FICO scores are calculated from five main categories of credit data in a consumer's credit report. Those categories, and their weighted values, are as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. See, https://www.myfico.com/credit-education/whats-in-your-credit-score/, *archived at*

https://perma.cc/E8Y3-F4AA.

113.   Payment history is the most important aspect of a consumer's credit score because it shows
       how the consumer has managed his finances, including any late payments. Credit history
       is also very important, as it demonstrates how long the consumer has been managing his
       accounts, when his last payments were made, and any recent charges. See,
       https://www.transunion.com/credit-score, *archived at* https://perma.cc/NRZ4-W83U.

114.   The cost of credit (e.g., interest rates, fees, etc.), the availability of credit, ratings for
       insurance products, and even unsolicited credit offers, such as the opportunity to refinance
       a mortgage at a lower interest rate, extended financing periods and lower rate auto loans,
       and even zero-percent financing credit offers for in-store credit lines, are all, by and large,
       driven by a consumer's credit score.

115.   Inaccurate or incorrect credit reporting very often results in a lower FICO and other credit
       scoring model scores, and thus higher costs of credit, diminished opportunity, and less
       purchasing power for consumers.

116.   Incorrectly reporting the tradeline of Plaintiff's Mortgage—which is open, active, and has
       a balance that Plaintiff is making payments on—with no balance, payment data, and as
       included in bankruptcy, adversely affects Plaintiff's FICO score, as it excludes any recent
       positive payment history associated with the Mortgage, it alters the age/length of credit
       history, and it alters the mix of accounts/types.

117.   There is no established rule or threshold for classifying the significance of a credit score
       change as minor or major because the impact of a change in score is dependent on the
       current score. For example, a one-point change in credit score that moves the consumer
       from one risk tier to the next may have a large impact on the consumer's access to credit

or the products and rates the consumer is able to secure.

118.    Consistent with FTC study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. See, https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/, archived at https://perma.cc/9TQN-S5WP.

### Defendants' Failures and Plaintiff's Damages

119.    It is inaccurate to report an account as Closed when it is not.

120.    It is inaccurate to report a payment history which is factually incorrect and negatively reflects upon an individual consumer's credit profile by making it appear that the consumer has failed to satisfy and live up to their monthly credit obligations.

121.    It is inaccurate to report that an account is included in and/or discharged in bankruptcy when it is not.

122.    Reporting an account was "included in bankruptcy" has no meaningful different from reporting that an account was "discharged in bankruptcy"—that is, the phrases are viewed as having the same meaning. *See Diaz v. Trans Union, LLC*, No. 1:18-cv-01341-DAD-EPG, 2019 U.S. Dist. LEXIS 95549, at *7 (E.D. Cal. June 5, 2019) "Indeed, many courts considering this very issue have concluded that "[t]here is no meaningful difference between the phrase `included in bankruptcy' and the phrase `discharged in bankruptcy.'") (*citing Butler v. Equifax Info. Servs., LLC*, No. 5:18-cv-02084-JGB-SHK (C.D. Cal. Apr. 3, 2019); *Smith v. Trans Union, LLC*, No. 2:18-cv-13098-GCS-SDD (E.D. Mich. May 10, 2019); *Fleming v. Trans Union, LLC*, No. 2:18-cv-9785-PA-PLA (C.D. Cal. March 8, 2019).

123.    It is inaccurate to report an account as CHAPTER 13 BANKRUPTCY when the account

was not included in a bankruptcy plan and instead is an account the consumer is paying directly to the creditor.

124.    As evidenced by Defendants' failures to correct the reporting of the PennyMac Account despite receiving Plaintiff's disputes to both Equifax and/or Experian, and the supporting documents attached to those disputes, Equifax and/or Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

125.    As evidenced by the inaccurate re-reporting after Plaintiff sent Equifax and Experian detailed disputes identifying the inaccurate information related to Plaintiff's PennyMac Account, Defendants, upon receipt of Plaintiff's disputes, each respectively failed to conduct proper and reasonable reinvestigations concerning the inaccurate information after receiving notice of the dispute from Plaintiff in violation of 15 U.S.C. §1681i and/or 15 U.S.C. § 1681s-2(b).

126.    Defendants failed to review all relevant information provided by Plaintiff in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

127.    Due to Defendants' failure to reasonably investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

128.    Defendants' continued inaccurate and negative reporting of the PennyMac Account in light of its knowledge of the actual error was willful. Plaintiff is, accordingly, eligible for

statutory damages.

129.   Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

130.   Based upon Defendants' knowledge of the Account, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under 15 U.S.C. § 1681e(b), and/or 15 U.S.C. § 1681i, and/or 15 U.S.C. § 1681s-2(b).

131.   Also as a result of Defendants' continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including, without limitation, fear of credit denials, actual credit denials, reduced credit scores, emotional distress, frustration, missed personal time in order to tend to this matter, vehicle operating costs for miles driving in order to tend to this matter, and inconvenience.

132.   By inaccurately reporting account information, Defendants acts and omissions have resulted in the illegitimate suppression of Plaintiff's FICO credit scores and other credit rating model scores.

133.   The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than they otherwise would.

134.   The existence of consumer reports which inaccurately report the Mortgage, and/or falsely suggest that the Mortgage has been discharged or is subject to discharge, make it inherently more difficult for Plaintiff to refinance her Mortgage in the future.

135.   The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness.

136.   By inaccurately reporting account information after notice and confirmation of its errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

**First Cause of Action**
**The Fair Credit Reporting Act**
**15 U.S.C. § 1681 *et seq*. (FCRA)**

137.   Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs as if fully set forth herein.

138.   The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

139.   As a result of each negligent violation of the FCRA, Plaintiff is entitled to actual damages from Defendants, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2).

140.   As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorney's fees pursuant to 15 U.S.C. §1681n(a)(3) from Defendants.

141.   Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above, and as a result, Defendants are liable to Plaintiff for the full amount of statutory, actual, and punitive damages, along with attorney's fees and costs of litigation.

**Request for Jury Trial**

142.   Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

**Prayer For Relief**

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2. Plaintiff's actual damages;

3. Statutory damages of not less than $100 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), against Defendants;

4. Punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2);

5. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n(a)(3) and/or 1681o(a)(2), against Defendants; and

6. Any other relief the Court may deem just and proper.

Respectfully submitted,

/s/ James R. Crump
James R. Crump #78704
Ryan M. Callahan #25363
**Callahan Law Firm, LLC**
222 W. Gregory Blvd., Suite 210
Kansas City, MO 64114-1138
Ph: 816-822-4041
ryan@callahanlawkc.com
james@callahanlawkc.com
Attorneys for Plaintiff